## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANGEL G. LUEVANO, et al.,

         *Plaintiffs*,

    v.

CHARLES EZELL, Acting Director, Office of
Personnel Management, et al.,

         *Defendants*,

  and

AMERICAN MOMENT
c/o Nick Solheim
300 Independence Ave SE
Washington, DC 20003

         *Proposed Defendant-Intervenor*,

  and

FEDS FOR FREEDOM
401 Ryland St.
Suite 200-A,
Reno, NV 89502

         *Proposed Defendant-Intervenor*.

Case No. 1:79-cv-00271-RBW

Judge Reggie B. Walton

## MOTION OF AMERICAN MOMENT AND FEDS FOR FREEDOM TO INTERVENE AS DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 24(b), American Moment and Feds for Freedom respectfully move to intervene as Defendants in the above-captioned case. In the alternative, American Moment and Feds for Freedom ask this Court to construe this motion as a request to participate as amicus curiae and grant them leave file a brief in support of Defendants.

Pursuant to Local Civil Rule 7(m), counsel for American Moment and Feds for Freedom has conferred with counsel for Plaintiffs and Defendants. Plaintiffs oppose intervention, but do not oppose an amicus brief. Defendants do not oppose either intervention or an amicus brief.

This motion is supported by an accompanying memorandum of law. In addition, Proposed Defendant-Intervenors have attached a declaration from American Moment Chief Executive Officer Nick Solheim as Exhibit A, a declaration from Feds for Freedom President Marcus Thornton as Exhibit B, a proposed motion to terminate the Consent Decree and accompanying memorandum of law as Exhibit C, and a proposed order as Exhibit D.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANGEL G. LUEVANO, et al.,

       *Plaintiffs*,

  v.

CHARLES EZELL, Acting Director, Office of
Personnel Management, et al.,

       *Defendants*,

  and

AMERICAN MOMENT,

       *Proposed Defendant-Intervenor*,

  and

FEDS FOR FREEDOM,

       *Proposed Defendant-Intervenor*.

Case No. 1:79-cv-00271-RBW

Judge Reggie B. Walton

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF AMERICAN MOMENT AND FEDS FOR FREEDOM TO INTERVENE AS DEFENDANTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.   AMERICAN MOMENT AND FEDS FOR FREEDOM SATISFY THE REQUIREMENTS FOR
         PERMISSIVE INTERVENTION ........................................................................................... 2

       A.   This Motion is Timely ............................................................................................. 2

       B.   American Moment and Feds for Freedom Have Claims or Defenses that Share
           Common Questions with the Main Action ............................................................... 5

       C.   Intervention Would Not Cause Undue Delay or Prejudice ..................................... 7

    II.  NO SHOWING OF INADEQUATE REPRESENTATION IS REQUIRED ........................................... 8

CONCLUSION ............................................................................................................................. 8

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*Ass'n of Wash. Bus. v. EPA*,
    No. 23-CV-3605 (DLF), 2024 WL 3225937 (D.D.C. June 28, 2024)..............................5, 6, 7

*Childs.' Health Def. v. CDC*,
    No. 1:23-cv-431 (TNM), 2024 WL 3521593 (D.D.C. July 24, 2024)......................................2

*Crossroads Grassroots Pol'y Strategies v. FEC*,
    788 F.3d 312 (D.C. Cir. 2015) .................................................................................................8

*EEOC v. Nat'l Childs.' Ctr.*, 146 F.3d 1042 (D.C. Cir. 1998) .......................................................5

*Hodgson v. United Mine Workers of Am.*,
    473 F.2d 118 (D.C. Cir. 1972) ................................................................................................4

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020) ................................................................................................................2

*NRDC v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ............................................................................................3, 4

*Oceans v. U.S. Dep't of the Interior*,
    No. 1:24-cv-00141-RCL, 2024 WL 1556005 (D.D.C. Apr. 10, 2024) ....................................8

*Ricci v. DeStefano*,
    557 U.S. 557 (2009) ................................................................................................................7

*Roane v. Leonhardt*,
    741 F.3d 147 (D.C. Cir. 2014) ............................................................................................3, 4

*Rufo v. Inmates of Suffolk Cnty.*,
    502 U.S. 367 (1992) ................................................................................................................7

*Smoke v. Norton*,
    252 F.3d 468 (D.C. Cir. 2001) ................................................................................................3

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023)................................................................................................................1

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ..............................................................................................8

*United States v. City of Detroit*,
    712 F.3d 925 (6th Cir. 2013) ..............................................................................................4, 5

*United States v. Google LLC*,
   No. 20-CV-3010, 2025 WL 372072 (D.D.C. Jan. 27, 2025)..................................................3, 5

*United States v. Oregon*,
   745 F.2d 550 (9th Cir. 1984) ........................................................................................4

*Va. House of Delegates v. Bethune-Hill*,
   587 U.S. 658 (2019)........................................................................................................2

*Wildearth Guardians v. Salazar*,
   272 F.R.D. 4 (D.D.C. 2010)...........................................................................................6

**OTHER AUTHORITIES**

Am. Moment, *Fellowship for American Statecraft*, https://perma.cc/QKJ8-7ETA
   (visited May 7, 2025).....................................................................................................6

Fed. R. Civ. P. 24(a)(2) ........................................................................................................8

Fed. R. Civ. P. 24(b)(1)......................................................................................................2, 8

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................................5

Fed. R. Civ. P. 24(b)(3).....................................................................................................2, 7, 8

*Individual Assessment*, OPM, https://perma.cc/P9FJ-4PCY (visited May 7, 2025).......................7

7C Wright & Miller, *Federal Practice & Procedure* § 1916 ...........................................................3

## INTRODUCTION

At the end of the nineteenth century, Congress tried to discard the political spoils system in federal employment and strengthen the capability of the Executive Branch. The newly created U.S. Civil Service Commission and its successor, the Office of Personnel Management ("OPM"), subsequently endeavored to staff the civil service using quantifiable aptitude. But that ended in 1981, when this Court approved a Consent Decree between a class of federal job applicants and OPM. Plaintiffs challenged OPM's use of the Professional and Administrative Career Exam ("PACE"), which they alleged had an unlawful disparate impact under Title VII of the Civil Rights Act of 1964. While the government denied any violation of the law, it agreed to stop administering the test, and every subsequent attempt to impose a new examination failed.

OPM now seeks to dissolve the 44-year-old Consent Decree, arguing that it requires treating job candidates differently based on their race in violation of Title VII and the Fifth Amendment, as interpreted by recent Supreme Court decisions. *See* OPM's Mot. to Terminate at 9–15, ECF No. 2. Specifically, OPM claims the Consent Decree requires race-conscious decisionmaking, contrary to Title VII. *Id.* at 10–11. OPM further explains that the Consent Decree cannot satisfy the required strict scrutiny under the Fifth Amendment because it neither serves a "compelling interest" nor is "narrowly tailored," in part because it lacks either a sunset provision or clear goals that signal when it has outlived its purpose. *Id.* at 13–15. Indeed, there is still "no end … in sight." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 213 (2023).

Proposed Defendant-Intervenors American Moment and Feds for Freedom now move for permissive intervention to support dissolving the Consent Decree. American Moment is a 501(c)(3) organization committed to helping young people serve in government. Feds for Freedom

1

is also a 501(c)(3) organization with a membership of over 9,000 federal employees. Both offer unique perspectives on the harm caused by this Consent Decree to current and future federal employees, and they make distinct legal arguments in support of its dissolution. In the alternative, this Court should accept the attached proposed motion to terminate by American Moment and Feds for Freedom as an amicus brief. *See* Proposed Mot. to Terminate, Ex. C.

## ARGUMENT

The Court should allow American Moment and Feds for Freedom to intervene in this case because they meet all the requirements for permissive intervention. Federal Rule of Civil Procedure 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). When those criteria are satisfied, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Intervenors seeking to join existing Defendants are not required to show Article III standing. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019); *Childs.' Health Def. v. CDC*, No. 1:23-cv-431 (TNM), 2024 WL 3521593, at *5 n.3 (D.D.C. July 24, 2024).

The Court should grant this motion to intervene because it is timely, demonstrates a "claim or defense" that shares common questions with the main action, and would create no undue delay or prejudice. American Moment and Feds for Freedom also raise important legal arguments that will aid the Court in deciding whether to terminate the Consent Decree.

I.    **AMERICAN MOMENT AND FEDS FOR FREEDOM SATISFY THE REQUIREMENTS FOR PERMISSIVE INTERVENTION**

   **A.  This Motion is Timely**

American Moment and Feds for Freedom timely move to intervene in this case. The

"timely motion" requirement in Rule 24(b) prescribes no specific deadline and must be "judged in consideration of all the circumstances." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001). Courts generally consider the "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Id.*; *see United States v. Google LLC*, No. 20-CV-3010, 2025 WL 372072, at *1 (D.D.C. Jan. 27, 2025). Timeliness "must have accommodating flexibility toward both the court and the litigants," and "must consider whether the applicant was in a position to seek intervention at an earlier stage in the case." 7C Wright & Miller, *Federal Practice & Procedure* § 1916 (cleaned up). Even if a "substantial amount of time" has passed since the start of the litigation, a motion to intervene is timely if it carries "no risk of prejudicing the existing parties." *Roane v. Leonhardt*, 741 F.3d 147, 152 (D.C. Cir. 2014).

This flexible standard allows motions to intervene years after litigation begins. In *NRDC v. Costle*, chemical companies moved to intervene three years after the case started to ensure they could participate in the oversight and implementation of a settlement between EPA and environmental groups. 561 F.2d 904, 906–07 (D.C. Cir. 1977). The motion was timely because it came within weeks of their various counsel learning of the settlement and advanced the limited purpose of participating in settlement administration. *Id.* at 907–08. Similarly, in *Hodgson v. United Mine Workers of America*, the court held that a motion to intervene by mineworkers in a suit against their union was timely seven years into the litigation because their sole purpose was to participate in the ongoing remedial process. 473 F.2d 118, 129–30 (D.C. Cir. 1972).

The same principles support intervention after even longer periods. For example, the Ninth Circuit in *United States v. Oregon* allowed the State of Idaho to intervene 15 years after the start of litigation because the case had entered a "new stage" of settlement negotiations. 745 F.2d 550,

552 (9th Cir. 1984). The Sixth Circuit in *United States v. City of Detroit* likewise held that a union's motion to intervene was timely 34 years after the plaintiffs filed suit because it was for the limited purpose of challenging a proposed consent decree. 712 F.3d 925, 930–32 (6th Cir. 2013).

The motion here is timely for the same reasons. American Moment was founded in 2021 and exists to help young people find work in government. *See* Decl. of Nick Solheim, Ex. A, ¶ 3. American Moment did not exist when this Court approved the Consent Decree in 1981, and its members are generally between 20 and 30 years old and were not even born, so they could not have intervened at that time. *See id.* Feds for Freedom was also founded in 2021 and could not have intervened in 1981, either. Decl. of Marcus Thornton, Ex. B, ¶ 2. Analogous to *NRDC*, both American Moment and Feds for Freedom learned only weeks ago about the possible dissolution of this Consent Decree, after the United States filed its motion. And like the movants in *NRDC*, *Hodgson*, *Oregon*, and *City of Detroit*, American Moment and Feds for Freedom seek to intervene for the sole purpose of supporting that dissolution, a remedial process that has just begun. In other words, this filing is "presented contemporaneously" with its limited purpose. *NRDC*, 561 F.2d at 908.

Moreover, intervention at this time by American Moment and Feds for Freedom would not prejudice the existing parties. Both American Moment and Feds for Freedom seek only to make additional legal arguments in support of terminating the Consent Decree. *See* Proposed Mot. to Terminate, Ex. C. Their participation would involve "no additional factual development," *Roane*, 741 F.3d at 152, nor "require additional discovery, necessitate further proceedings, or delay resolution of the case," *Google LLC*, 2025 WL 372072, at *7. Further, a consent decree that regulates hiring across the federal government profoundly affects the public interest, including the

interests of current and future federal workers, so "getting all interested parties to the table promotes an effective and fair solution." *City of Detroit*, 712 F.3d at 932.

### B. American Moment and Feds for Freedom Have Claims or Defenses that Share Common Questions with the Main Action

A permissive intervenor must demonstrate "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see EEOC v. Nat'l Childs.' Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The D.C. Circuit has "eschewed strict readings of the phrase 'claim or defense,' allowing intervention even in situations where the existence of any nominate claim or defense is difficult to find." *Ass'n of Wash. Bus. v. EPA*, No. 23-CV-3605 (DLF), 2024 WL 3225937, at *3 (D.D.C. June 28, 2024) (quoting *Nat'l Childs.' Ctr.*, 146 F.3d at 1046).

This Court has held that an intervenor "has a 'claim or defense' under Rule 24(b)'s liberal standard" when it "seeks to intervene to defend" an agency action that the intervenor "consistently uses," and thus "will support the Agency's efforts to defend" that action. *Id.* at *13 (cleaned up). Similarly, where intervenors "intend to oppose plaintiffs' claims and requests for relief, offer defensive arguments, and seek the same relief as the [defendant] Agency," they "easily satisf[y] the liberal 'claim or defense' requirement." *Id.* at *11 (cleaned up).

American Moment and Feds for Freedom "easily satisfy" this requirement. To begin, both seek to support OPM's efforts to dissolve a consent decree that harms their core interests. *Id.* at *13. One of American Moment's central goals is ensuring that young people with unconventional backgrounds can serve in government. *See* Solheim Decl., Ex. A, ¶¶ 3–4. Its flagship program, the "Fellowship for American Statecraft," advertises that "[n]o college degree or prior political experience [is] required for admission." *See* Am. Moment, *Fellowship for American Statecraft*, https://perma.cc/QKJ8-7ETA (visited May 7, 2025). Accordingly, American Moment supports the use of employment tests that enable talented potential public servants to demonstrate their ability

in the absence of more traditional signals, such as a college diploma. American Moment has a direct interest in and stands ready to "support [OPM's] efforts" to eliminate barriers to implementing appropriate and effective employment tests for civil service positions. *Ass'n of Wash. Bus.*, 2024 WL 3225937, at *13.

Feds for Freedom comprises over 9,000 federal employees and exists to "advocate and litigate for constitutional rights" of federal employees and to "reform the federal service to be more accountable, transparent, and representative of the values of the American people." Thornton Decl., Ex. B, ¶¶ 2–3. It supports terminating a consent decree that requires the government to make employment decisions based on race and limits the use of employment tests, which promote accountability and transparency in hiring. *Id.* ¶ 4. Feds for Freedom will "support [OPM's] efforts" to return to a hiring process based on quantifiable aptitude and to end the race-conscious policies required by the Consent Decree. *Ass'n of Wash. Bus.*, 2024 WL 3225937, at *13.

Both American Moment and Feds for Freedom will also advance a "claim or defense" on behalf of their members. *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 16 (D.D.C. 2010). The membership of American Moment includes young people born decades after this Consent Decree was initially entered. *See* Solheim Decl., Ex. A. American Moment members intend to pursue careers in federal public service and recognize that they will be more competitive if allowed to showcase their abilities on an employment test. *See id.* If this Consent Decree is lifted and OPM reinstates employment tests as part of the hiring process, American Moment members will "consistently use" those tests in seeking federal employment. *Ass'n of Wash. Bus.*, 2024 WL 3225937, at *13. Similarly, Feds for Freedom's members are already federal employees, and agencies may use assessments "to make a wide variety of decisions about applicants *and employees*." *Individual Assessment*, OPM, https://perma.cc/P9FJ-4PCY (visited May 7, 2025)

(emphasis added). Accordingly, Feds for Freedom's members will also "consistently use" any future employment tests OPM implements after this Consent Decree is terminated. *Ass'n of Wash. Bus.*, 2024 WL 3225937, at *13.

Finally, both American Moment and Feds for Freedom will "offer defensive arguments" while seeking the "same relief" as OPM. *Id.* at *11. While the American Moment, Feds for Freedom, and OPM all seek the same relief (termination of the Consent Decree), their specific arguments may diverge, as the attached proposed motion to terminate demonstrates. *See* Proposed Mot. to Terminate, Ex. C. Indeed, American Moment and Feds for Freedom will argue that disparate impact liability under Title VII is itself unconstitutional under recent Supreme Court precedent, making "legal what the decree was designed to prevent." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992). They also will further develop an argument briefly made by OPM—that there was no "strong basis in evidence" that OPM would have faced disparate impact liability if it did not adopt the Consent Decree's race-conscious remedy. *See* OPM's Mot. to Terminate at 10–11; *see also Ricci v. DeStefano*, 557 U.S. 557, 581–85 (2009).

### C. Intervention Would Not Cause Undue Delay or Prejudice

Once a prospective intervenor satisfies the timeliness and claim-or-defense requirements, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Intervention here would do neither. American Moment and Feds for Freedom are prepared to promptly file their own motion to terminate the Consent Decree upon being granted intervention, and the Plaintiffs will be able to respond to those arguments in the usual course. American Moment and Feds for Freedom seek intervention only to make additional legal arguments and will not impose any material burdens on the case procedurally or in terms of factual development.

## II.    NO SHOWING OF INADEQUATE REPRESENTATION IS REQUIRED

Unlike mandatory intervention, permissive intervention does not require showing that existing parties would inadequately represent the interests of the intervenors. *Compare* Fed. R. Civ. P. 24(a)(2), *with* Fed. R. Civ. P. 24(b)(1), (3). Accordingly, American Moment and Feds for Freedom need not make that showing here.

In any event, that showing "is not onerous" and is satisfied whenever "[t]he applicant … show[s] that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Oceans v. U.S. Dep't of the Interior*, No. 1:24-cv-00141-RCL, 2024 WL 1556005, at \*4 (D.D.C. Apr. 10, 2024) (quoting *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009)). When the requirement applies, a movant "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980). And the D.C. Circuit has held that courts should "look skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015).

American Moment and Feds for Freedom plan to make legal arguments distinct from those of Defendants. And Defendants here are government entities, while American Moment and Feds for Freedom are private parties with their own interests specific to their missions and members. Therefore, even though American Moment and Feds for Freedom are not required to show inadequate representation of their interests, they satisfy that standard anyway.

## CONCLUSION

This Court should grant the motion of Proposed Defendant-Intervenors American Moment and Feds for Freedom for permissive intervention under Rule 24(b) and permit them to file a motion to terminate the Consent Decree. In the alternative, this Court should construe this motion

as a request to participate as amicus curiae and grant American Moment and Feds for Freedom leave file a brief in support of Defendants.

Dated: May 15, 2025                                    Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER (DC BAR # 1011329)
JARED M. KELSON (DC BAR # 241393)
ANDREW W. SMITH (DC BAR # 90026919)
BOYDEN GRAY PLLC
800 Connecticut Ave NW, Suite 900
Washington, DC 20006
202-706-5488
tmccotter@boydengray.com
jkelson@boydengray.com
asmith@boydengray.com

NICHOLAS R. BARRY*
JACOB P. MECKLER (DC BAR # 90005210)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave, SE #231
Washington, DC 20003
202-964-3721
Nicholas.Barry@AFLegal.org
Jacob.Meckler@AFLegal.org

*Pro hac vice motion forthcoming

## CERTIFICATE OF SERVICE

I certify that on May 15, 2025, the foregoing was filed electronically with the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: May 15, 2025

/s/ R. Trent McCotter
R. Trent McCotter

10