# EXHIBIT B

1981 WL 402614 (PERSONNET)

OPM Guidance Documents

LUEVANO CONSENT DECREE

Document Number: MEMO 1981-11-19

November 19, 1981

Hardcopy Pages: 47

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGEL G. LUEVANO, et al.,

Plaintiffs,

v. Civil Action No. 79-0271

ALAN CAMPBELL, Director,
Office of Personnel
Management, et al.,

Defendants
_____
```

CONSENT DECREE

**A. Statement of Facts**

1. On January 29, 1979, a number of individuals and organizational plaintiffs representing blacks and Hispanics initiated this lawsuit against defendant Alan Campbell, Director of the Office of Personnel Management (OPM) in order to challenge the implementation and use of the Professional and Administrative Career Examination (PACE). The three individual plaintiffs, Angel Luevano, a Hispanic male, Melody A. Van, a black woman, and Vicky L. Chapman, a black woman, all of whom had failed to achieve a passing score on the April 1978 PACE, plaintiff I.M.A.G.E De California, an unincorporated association of Hispanic American Federal and State governmental employees organized to promote the employment of Hispanic Americans in government, and plaintiff-intervenor Vilma D. Diaz, a Hispanic woman who failed to achieve a passing score on the March 1979 PACE, alleged that the PACE has resulted in adverse impact on plaintiffs and their class. Plaintiffs further allege that despite its adverse impact upon blacks and Hispanics, the PACE has not been properly validated in accordance with the Uniform Guidelines on Employee Selection Procedures, 43 Fed. Reg. 38290 (1978( (hereinafter 'Uniform Guidelines'), the EEOC Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607.1 (1978); or the Federal Executive Agency Guidelines on Employee Selection Procedures, 28 C.F. R. S50-14 (1978), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ('Title VII'). Plaintiffs seek a declaration that use of the PACE violates Title VII, an injunction prohibiting defendant from continuing to use of the PACE, and other relief.

The basic qualification standards for consideration for appointment into job categories covered by the PACE, a four-year college degree or equivalent work experience, are not challenged by plaintiffs of this case. This Decree does not resolve the claims of any class member involving any use of the PACE or of PACE scores for any purpose other than competitive external hiring. The entry of this Consent Decree shall not preclude any plaintiff or class member from filing or pursuing any other proceeding challenging the qualification standards for the PACE or of PACE scores for any purpose other than competitive external hiring and the doctrines of res judicata and collateral estoppel shall have no application to such challenges.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                                                                                1

In an answer filed on December 14, 1979, defendant OPM expressly denied that use of the PACE by OPM or its predecessor, the U.S. Civil Service Commission, violated Title VII, and further denied that the PACE had not been properly validated in accordance with applicable Federal guidelines and Title VII. Defendants do not, be agreeing to the entry of this Decree, admit to any such allegations in the Complaint and deny that defendants are subject to any liability.

Plaintiffs and defendants desire to resolve this action and all issues raised by the Complaint without the time and expense of contested litigation. In order to avoid this burden and in order to reaffirm the Federal policy of a representative workforce, plaintiffs and defendants consent to the entry of this Decree in full settlement of all of plaintiffs' claims of racial and national origin discrimination which arise from defendants implementation and use of the PACE.

**B. General Terms**

2(a) The parties recognize that '[i]t is the policy of the United States . . . to provide . . . a competent, honest and productive Federal Work Force reflective of the Nation's diversity,' S 3(1) of the Civil Service Reform Act of 1978, Pub. L. 95-454, 92 Stat. 1112, and to eliminate the underrepresentation of minorities in the Federal work force. It is the purpose of this Consent Decree to eliminate adverse impact against blacks and against Hispanics as provided herein during the period of retention of the Court's jurisdiction, and to establish alternative examining procedures which are consistent with Title VII, for those job categories which are subject to the PACE requirement (a list of which is appended hereto as Appendix A). The parties intend that this agreement be construed to effectuate the foregoing policies and purposes.

(b) In accord with the underlying policies of Title VII and the Civil Service Reform Act, the government has decided to eliminate the PACE as an examining procedure, and to adopt as a long term objective the development for PACE occupations listed in Appendix A of appropriate alternative examining procedures. It is the purpose of this Decree to further the policies described above by providing for the elimination of the PACE, and for the development of alternative examining procedures which will eliminate adverse impact against blacks and against Hispanics as much as feasible and which validly and fairly test the relative capacity of applicants to perform the jobs listed in Appendix A.

3. The Court finds that this action is maintainable as a class action pursuant to Rule 23(b)(2), Fed.R.civ.P., and that the named individual plaintiffs are proper class representatives of the plaintiff class. The Court certifies and defines the plaintiff class to include:

All blacks and all Hispanics who have taken the PACE for hire, but not promotion, into entry-level PACE jobs at any time on or after May 19, 1975, or who, during the term of this Decree, take or may take the PACE and/or any alternative examining procedures developed by an agency and/or OPM for hire, but not promotion, into entry-level PACE jobs.

The named individual plaintiffs and each class member shall be subject to and bound by the terms of this Decree. They shall each be bound fully by the doctrines of res judicata and collateral estoppel with respect to the claims resolved by this Decree, as specified in paragraph 6.

4. The Court finds that the government agencies named as defendants pursuant to Rule 19, Fed. R. Civ. P. are proper class representatives. The Court certifies and defines the defendant class to include all Federal departments, agencies, and corporations subject to Section 717 of the Civil Rights Act of 1964, as amended, which have used, are using, or may use the PACE. A list of the defendant class members is attached hereto as Appendix B. In addition to its joinder as a Federal agency which has used, is using, or may use the PACE, the Equal Employment Opportunity Commission is joined as a party for relief purposes in order to assist in implementing paragraph 17(i) of the Decree herein. The named defendants and each defendant class member shall be subject to and bound by the terms of this Decree.

5. Neither the agreement to entry of this Decree nor anything in this Decree shall be, or shall be construed to be, or shall be admissible in any proceeding as evidence of an admission or a finding by the Court that any defendant or any member of the defendant class has violated Title VII with respect to its implementation and use of the PACE, or that the PACE has not been properly validated in accordance with applicable Federal guidelines. The Decree shall be admissible in any proceeding as evidence of its contents, and of the obligations it imposes.

6. (a) This Decree resolves all claims by plaintiffs and the members of the plaintiff class of racial and national origin discrimination arising from the implementation and use of the PACE for external hiring by defendants and the members of the defendant class. The parties and the Court agree that no action required by this Decree shall give rise to any claim for monetary or injunctive relief under the provisions of Title VII. Plaintiffs and the plaintiff class reserve their right to seek all appropriate relief under Title VII for the violation of any obligations imposed by this Decree, to the extent of any harm suffered by the class because of that violation. The parties and the Court agrees that defendants' compliance with this Decree shall be deemed by be compliance with Title VII as to the claims resolved by this Decree.

(b) This Decree is intended to bind plaintiffs and the members of the plaintiff class, and defendants and the members of the defendant class, to the extend contemplated by law. Thus, plaintiffs and the members of the plaintiff class may not challenge as unlawful any actions required by this Decree, nor may they seek relief which is in conflict with this Decree. The parties recognize, however, that it is against public policy to bar claims for future injuries caused by future actions of defendants which violate Title VII, and the parties do not intend to bar such claims by plaintiffs or members of plaintiff class except those claims which may arise from any future use of the PACE which is authorized by the terms of the Decree.

(c) This Decree does not resolve the claim of, or otherwise bind, any person who has been adversely affected by any use of the PACE for internal placements.

(d) Nothing in this paragraph is intended to bar any party from seeking such modifications of this Decree, to carry out its purposes, as may be appropriate in light of changes in circumstances or changes in the law.

(e) Nothing in this Decree shall be construed as requiring any reduction in the affirmative action efforts of any agency with respect to incumbent black or Hispanic employees, or other minority and female employees.

(f) Any action which this Decree requires an agency to take may be taken instead, at the discretion of the government, by OPM. OPM shall then have all the rights and obligations which the agency would otherwise have.

7. In order to ensure compliance with the terms of this Decree, to provide a framework for implementation of this Decree, and to receive reports concerning the government's actions hereunder, the Court shall retain jurisdiction over this case. The period of retention of jurisdiction shall expire, with respect to any job category listed in Appendix A, five years after the cessation of the use of PACE results for the job category and the implementation of an alternative examining procedure for that job category at the GS-5 or GS-7 level. This period of time may be extended for any such job category by agreement of the parties, or upon motion for good cause shown. The absence of examining procedures which have been validated in accordance with Title VII and the Uniform Guidelines for some or all of the PACE occupations at the end of that five year period shall not by itself constitute cause for extension of the period for retention of jurisdiction. The absence of examining procedures for some or all of the PACE occupations which satisfy the government's long term objective, as stated in paragraph 2(b), shall not constitute cause for extension of the period for retention of jurisdiction.

8. The following terms used in this Decree shall be defined as set forth below:

(a) The terms 'Federal agency' or 'agency' shall mean any member of the defendant class, as defined in paragraph 4.

(b) The phrase 'adverse impact' shall have the following meanings in the following situations:

(1) In the case of interim use of the PACE, 'adverse impact' shall mean that the difference between the proportion of blacks or of Hispanics among the appointments from all sources made by an agency for the job category in question, and the proportion of blacks of Hispanics, respectively, among the persons who took the PACE in the prior reporting year (or, in the event that statistics for the prior reporting year are not available, for the most recent prior period for which statistics are maintained), is statistically significant at the .05 level or confidence or, if not so statistically significant, that the proportion of blacks or of Hispanics among such appointments is less than 80% of the proportion of blacks or of Hispanics, respectively, among the persons so taking the PACE.

(2) In the case of alternative examining procedures which are administered by an agency or OPM with respect to an occupation which exists in a single agency, 'adverse impact' shall mean that the difference between the appointment rate for

blacks or for Hispanics and the appointment rate for non-Hispanic whites is statistically significant at the .05 level of confidence or, if not so statistically significant, that the appointment rate for blacks or for Hispanics is less than 80% of the appointment rate for non-Hispanic whites.

(3) In the case of alternative examining procedures which are administered by OPM for use by more than one agency:

(i) 'adverse impact' shall mean that the difference between the appointment rate for blacks or for Hispanics and the appointment rate for non-Hispanic whites is statistically significant at the .05 level of confidence or, if not so statistically significant, that the appointment rate for blacks or for Hispanics is less than 80% of the appointment rate for non-Hispanic whites.

(ii) Where adverse impact, as defined in &para;8(b)(3)(i) above, has been shown for the GS-5 and GS-7 entry-level positions in the job category as a whole, OPM will not be in violation of the Decree if it can show either: (A) that the difference between the referral rate for blacks and for Hispanics and the referral rate for non-Hispanic whites is not statistically significant at the .05 level of confidence, or, if not so statistically significant, that the referral rate for blacks and for Hispanics, respectively, is more than 80% of the referral rate for non-Hispanic whites; or (B) that the examining procedure has been properly validated. The term 'referral rate' shall mean the number obtained by dividing the total number of persons in a racial or ethnic group referred by OPM to all agencies for the job category in question by the number of applicants, as defined below, in that group.

(4) With respect to alternative examining procedures, adverse impact shall be calculated on the basis of applicants who applies, and appointments which were made, during the same reporting year. If, in a particular instance, the relevant information is not available and could not reasonably have been obtained, the parties shall attempt to reach agreement on the next most appropriate basis for determining adverse impact. In the absence of agreement, the matter shall be presented to the Court for resolution. Where an agency has kept records showing the applications and appointments attributable to particular administrations of an alternative examining procedure, and has reported such statistics pursuant to &para; 25 of this Decree, adverse impact shall be calculated on the basis of the applicants and appointments attributable to all administrations of the alternative examining procedure during a reporting year, notwithstanding the fact that some applications, may have been made in a different year.

(5) The term 'applicant' shall mean, for the purposes of subparagraphs (2) and (3), any individual who possesses a four-year college degree or equivalent work experience or any different level of education or experience subsequently required, and who completes the application process, insofar as he or she is permitted, for a job presently or previously covered by PACE.

(6) Determinations of adverse impact may be made on any or all of the following bases, as appropriate, any of which shall be sufficient for the purposes of the enforcement procedures under this Decree:

(i) on a nationwide basis for any job category listed in Appendix A;

(ii) on a regional basis for any job category listed in Appendix A in any of the geographic areas for PACE consideration, as set forth in the PACE announcement attached hereto as Appendix C (whether or not the job category in question is still subject to the PACE or is instead subject to an alternative examining procedure) in which there are 40 or more appointments into that job category in that region in that year, and in which the hiring decision is made on a regional or localized basis;

(iii) on the basis of the alternative examining procedure as a whole for cross agency jobs, aggregating statistics for each of the agencies using the procedure;

(iv) to the extent that OPM or an agency combines various jobs formerly subject to the PACE and develops a single selection procedure in which the standards of assessment of qualifications of applicants are the same for each job, adverse impact shall also be computed for the combined jobs as a whole; and

(v) on such bases not broken down by region under the limitations described in basis (ii) above.

Where the number of appointments for any year is too small to determine adverse impact, adverse impact may be determined

by aggregating statistics for that year and the following year. Except as otherwise specified, adverse impact shall be calculated on the basis of the reporting year described in &para; 8(j). None of the provisions of this subparagraph shall be construed in a manner which would conflict with any of the provisions of &para;9.

(7) An agency may choose whether a determination of adverse impact shall be made on the basis of external applicants and of the appointments from all external sources as described in &para;&para; 8(b)(1) through 8(b)(3) above, or on the basis of both external and internal applicants and on the basis of appointments from all sources. The latter election may be made only if the agency maintains and reports information showing the actual numbers of internal applicants and of the selections of such internal applicants. An agency which is not involved in any pending enforcement proceeding under the provisions of &para; 17 may change its election, as to future reporting years, at any time two or more years after having made its previous election. This subparagraph shall not apply to &para; 8(b)(3)(i) or &para; 8(b)(3)(iii) above unless all agencies using the same alternative examining procedure have elected to include both internal applicants and internal selections in the determinations of adverse impact as to them.

(8) Notwithstanding the provisions of &para; 8(b)(6)(ii), an agency may elect to have its own regions, rather than the geographic areas for PACE consideration, used for the purposes set forth in that subparagraph, if it maintains and reports information on the basis of its own regions pursuant to &para; 25 of this Decree. Where an agency is not organized along regional lines, it may elect to use its own hiring entities for reporting purposes. An agency which is not involved in any pending enforcement proceeding under the provisions of &para; 17 may change its election, as to future reporting years, at any time two or more reporting years after having made its previous election.

(c) In determining whether use of the alternative examining procedure established by an agency and/or OPM pursuant to &para;12, in conjunction with the special programs described in &para;16, has resulted in adverse impact against blacks or against Hispanics, the phrase 'appointment rate' shall mean the number obtained by dividing the total number of persons a racial or ethnic group selected by a Federal agency for a particular entry level job category listed in Appendix A by the number of applicants in that group for that job category under the examining procedure in question.

(d) The phrase 'job subject to the PACE requirement,' 'PACE job,' 'PACE occupation,' 'job classification,' or 'job category' shall mean any entry level job at the GS-5 or GS-7 level for which the PACE was used as an examining procedure as of January 1, 1979 or earlier. A list of these jobs is attached hereto as Appendix A.

(e) The term 'Hispanic' shall include all individuals of Mexican, Puerto Rican, Cuban, Central or South American or other Spanish culture or origin, regardless of race, and does not include individuals of Asian origin as defined in Directive 15, of the Office of Statistical Policy, Department of Commerce, attached hereto as Appendix D.

(f) 'All practicable efforts', as used herein, include use, to the greatest extent feasible, consistent with the agency's performance of its mission as authorized by law, of the special programs described in &para; 16 and of similar programs which may be implemented to achieve the purposes of this Decree, and of the recruiting efforts as described in &para;&para; 14 and 16 and of other similar recruiting programs for which PACE jobs have been specifically targeted.

(1) The question whether an agency has used 'all practicable efforts' is a question of fact which may vary from job to job, from agency to agency, and from year to year. In determining whether an agency which has not hired a sufficient number of blacks and of Hispanics to eliminate adverse impact has, nonetheless, used all practicable efforts, as required by the Decree, to eliminate such adverse impact, the finder of fact may consider various factors including, but not limited to: (a) the number of vacancies filled in the job category or job categories in question; (b) the comparative difference between the number of blacks and of Hispanics who are hired through the PACE or the alternative examining procedure in question and the number of blacks and of Hispanics whose hire would have eliminated adverse impact, as defined in the Decree; and (c) the efforts made by the agency. This question shall be decided in a manner consistent with the terms and with the purposes of this decree.

(2) To the extent that OPM and/or an agency have maintained records differentiated by race and ethnic group of instances in which individuals have declined appointment to a job for which they have been selected, and OPM and/or the agency carries the burden of establishing that there were racial or ethnic differences in the rate at which good-faith offers of appointment have been declined and that such differences account for part or all of the resulting adverse impact, such proof shall constitute

presumptive compliance with the all practicable efforts obligation as to that part of the adverse impact it explains.

(g) All references to OPM in this Decree shall be construed so as to include its predecessor agency, the U.S. Civil Service Commission.

(h) All references to 'Uniform Guidelines' in this Decree shall refer to the Uniform Guidelines on Employee Selection Procedures, 43 Fed. Reg. 38290 (1978), 5 C.F.R. 300.103, 28 C.F.R. 50.14, and 29 C.F.R. Part 1607, or as subsequently modified; provided that if any provision of the Uniform Guidelines is not consistent with prevailing judicial interpretations of Title VII at the time of any issue between the parties, the judicial interpretation of Title VII shall govern.

(i) All references to 'valid,' 'validated' 'validity' or to 'validation' in this Decree shall, except where otherwise noted, refer to the demonstration, in an appropriate study, that the agency's use of a particular examining procedure for a particular job category or group of job categories meets all of the applicable standards of the Uniform Guidelines.

(j) The phrase 'alternative examining procedure' shall mean the group of factors, including test scores and any other criteria which are considered, and the relative use made of each such factor, in making an appointment decision with respect to an applicant (as that term is defined in &para; 8(b)(4)), for employment as the GS-5 or GS-7 level in a job category listed in Appendix A.

(k) The term 'reporting year' shall mean the period of time commencing on October 1 of each year and ending with September 30 of the following year, except that the first reporting date shall be September 1, 1982.

9. Any adverse impact which results from the requirements of the Veteran's preference Act, 5 U.S. C. § 3318, will be taken into account and may constitute a defense to the determination of adverse impact with respect to any competitive procedures. It shall also be a defense if adverse impact is attributable to the fact that persons taking the PACE or alternative examining procedures did not possess the basic minimum qualifications, a four-year college degree or equivalent work experience (or any different level of education of experience subsequently required) for appointment to a job category covered by PACE. In situations in which adverse impact has been shown by aggregating statistics for different job categories pursuant to the provisions of &para; 8(b)(5)(iv), and in which one or more of the aggregated job categories is subject to the requirement that specific application must be made for such category, it shall be a defense to a finding of adverse impact for a specific job category that any racial or ethnic differences in appointment rates do not meet the standards set forth in &para; 8(b)(2). To the extent that OPM and/or an agency have maintained records of instances where individuals have declined appointment to a job for which they have been selected, racial or ethnic differences in the rates at which appointments have been declined may also constitute a defense to the determination of adverse impact. OPM and/or the agencies involved shall have the burden of establishing these defenses, and shall have the burden of establishing the amount of adverse impact which is explained by a defense.

C. Stipulation of Facts

10. The parties hereby stipulate to the following facts:

(a) The Professional and Administrative Career Examination (PACE) is an assessment instrument used by defendant OPM and its predecessor, the U.S. Civil Service Commission, to identify qualified individuals for employment into entry level jobs in over 100 professional and administrative occupations in the Federal service. The written portion of the PACE was first administered during the Fall of 1974. During the first two years of its use, over 225,000 persons per year took the written test of the PACE. Approximately 10,000 individuals per year were selected from among these persons. During the last two years, approximately 130,000 to 160,000 applicants per year took the PACE. Approximately 7,000 individuals per year were selected from among these persons.

(b) In order to compete for an entry-level PACE job, the applicant must have a four-year college degree or three years of professional experience or the equivalent combination of experience and education. Over 90% of those individuals who compete in the PACE are or will be college graduates within nine months. The applicant must fill out an application form and take a written test. The written test scores are converted into ratings. The lowest possible rating is 40. In order to be considered for competitive appointment, an individual must attain a rating of not lower than 70. In many areas and for many

jobs, due to the large number of applicants with high PACE ratings, a rating of 90 or higher is necessary in order for the applicant to be referred to an employing agency for consideration for employment. Likewise, in many areas and for many jobs, a rating in the lower range of eligibility above 70 is sufficient in order for the applicant to be referred to an employing agency for consideration for appointment.

(c) If an applicant has a 3.5 grade point average on a 4.0 scale for all undergraduate courses completed toward a baccalaureate degree, or stands in the upper 10% of a baccalaureate graduating class, or of a major university subdivision such as a college of Arts and Sciences, that individual receives additional points on the basis of his or her scholarship. Under the present system, the additional points are assigned by using this written test rating of applicants who qualify under the above standards and averaging it with 100. The minimum rating for such applicants is, therefore, 70 -- (40 + 100) divided by two -- thus rendering all such applicants eligible to be ranked for consideration.

(d) In accordance with 5 U.S.C. § 3309, individuals who are eligible for Veterans' Preference shall have additional points added to their rating if they attain a rating of no less than 70 on the written test. There are several kinds of veterans preferences. Five-point Tentative Preference (TP) is authorized if a veteran has served an appropriate term of military service. Ten Point Compensable Preference (CP) is authorized if a veteran has incurred a service-connected disability of 10% or more. Finally, ten-point Other Preference (XP) is authorized if the applicant is the mother of a veteran who died on active duty, surviving spouse of a deceased veteran, or the spouse of a disabled veteran under certain conditions. The appropriate number of points is added to the rating after the addition of scholarship points, as described above, if appropriate. Ratings for an eligible veteran may range, depending upon the type of preference accorded, from 75 to 105 or from 80 to 110.

(e) After eligible individuals with ratings of 70 or more have been identified, OPM prepares a rank order list of the eligible applicants. In accordance with statute, all eligible CP veterans, regardless of their ratings, are placed at the top of the list. Both eligible TP and XP veterans are listed along with non-veterans in order of their ratings, but such veterans are always placed above non-veterans who possess the same numerical rating.

(f) If an agency has a vacant position in a PACE job category, the agency requests from the local OPM Area Office a list of the names of PACE eligibles. This list is referred to as a 'certificate.' The agency makes its selection from the certificate. In considering certified candidates, the agency must follow the 'rule of three,' 5 U.S.C. &para; 3318, under which it can select any of the top three available rating-ordered eligibles, with special consideration given to veterans as required by statute. The selecting official may not generally by-pass a veteran in order to choose a non-veteran with the same or a lower rating.

(g) In preparing a certificate for a particular position, OPM may consider, at the request of the agency, additional requirements of the job such as, for example, knowledge of a specific foreign language, and certify qualified candidates on the register.

(h) Data collected by OPM from a sample of test-takers from the January, 1978 administration of the PACE AND from all test-takers during the April, 1978 administrations show:

```
Whites Blacks Hispanics

Total number taking the PACE 45,539 6,488 2,694

Number achieving unaugmented
score of 70 or above 19,177 323 347
-----% of total 42.1% 5.0% 12.9%

Number achieving augmented
score of 70 or above 21,343 940 518
-----% of total 46.9% 14.5% 19.2%

Number achieving unaugmented
score of 90 or above 3,861 17 40
-----% of total 8.5% 0.3% 1.5%

Number achieving augmented 6,030 42 69
score of 90 or above 13.2% 0.6% 2.6%
-----% of total
```

Each of the above differences between the scoring patterns of blacks and of whites, and each of the above differences between the scoring patterns of Hispanics and of whites, is statistically significant at the .01 level of confidence.

(i) The PACE was developed and implemented prior to the issuance of the Uniform Guidelines. To date, OPM has not undertaken a separate study to determine differential predictiveness as to race or ethnicity. OPM has conducted a construct validation study of the written test portion of the PACE, and has conducted criterion-related studies with respect to 4 of the 118 PACE job categories. OPM believes that these studies are sufficient to justify the contructs used in the PACE. Plaintiffs and defendants disagree on whether the PACE has been properly validated for use in external hires, in promotions, or in selection for Upward Mobility programs, in accordance with Title VII and applicable Federal guidelines.

11. The court adopts the stipulation of the parties, and finds as fact the matters stated in &para; 10 above.

**D. Permanent Injunctive Relief**

12. (a) Defendants which conduct an alternative examining procedure for a job category set forth in Appendix A are enjoined from violating Title VII of the Civil Rights Act of 1964, as amended, with respect to any examining procedures used to select for those job categories listed in Appendix A. Defendants are permanently enjoined from future use of the PACE except as defined in paragraph 16 of this Decree, and except for non-operational research purposes.

(b) Except as described in subparagraphs (c) through (g) below, during the period of retention of the Court's jurisdiction, as defined in paragraph 7, if there is adverse impact, then defendants shall use all practicable efforts to eliminate adverse impact in appointments to the job categories listed in Appendix A. If in any reporting year there is no adverse impact in appointments for a job category listed in Appendix A, defendants have no obligation to use 'all practicable efforts' with respect to that job category for that year.

(c) At any time three years after the effective date of the Decree an agency may cease the use of all practicable efforts to eliminate any adverse impact which exists in selections for a job category, and may rely on the validity of an alternative examining procedure as its sole defense to an enforcement proceeding brought under the provisions of paragraph 17, where both of the following conditions have been satisfied:

(i) where one or more alternative examining procedures have been implemented to replace the PACE and have been used for actual hiring for the job category in question for at least a two-year period; and

(ii) where the agency has available evidence, based on an adequate sample, of the impact of the use of the selection procedure on blacks as compared with non-Hispanic whites, and on Hispanics as compared with non-Hispanic whites.

Where both of these conditions set forth above have been satisfied and an agency can demonstrate the validity of its alternative examining procedure, the failure to eliminate adverse impact with not constitute a violation of this Decree.

(d) An agency which has exercised its option under subparagraph (c) of ceasing to use all practicable efforts to eliminate adverse impact resulting from the use of the alternative examining procedure in question shall be liable for full relief under Title VII and under this Decree in the event that the Court, in an enforcement proceeding under the provisions of paragraph 17, decides that the agency has not shown its use of the procedure to meet the standards for final use under the Uniform Guidelines.

(e) An alternative examining procedure for a job category listed in Appendix A may be put into use without prior notification to plaintiffs and without obtaining the prior approval of the Attorney General or of his or her designate. If an agency responsible for hiring into a job category listed in Appendix A intends to cease the use of all practicable efforts to eliminate adverse impact resulting from the alternative examining procedure for the job in question, that agency shall send a notice to plaintiffs of its intention 60 days prior to the date of the intended action, together with a complete copy of the validation study and of the documents which support that study, including documents which contain available evidence, based on an adequate sample, of the impact of the alternative examining procedure upon blacks and Hispanics. Other communications to the Department of Justice need not be disclosed.

Upon receiving this notice, if plaintiffs intend to challenge the validity of the alternative examining procedures in question, plaintiffs shall file with the Attorney General a notice of their intention to challenge the validity of an alternative examining procedure 45 days before the commencement of their intended enforcement proceedings under the provisions of paragraph 17. This notice shall be promptly transmitted to the agency responsible for developing and administering the examining procedure in question.

The filing of such notice with the Attorney General shall commence the Attorney General's review procedure under paragraph 12(f), whether or not the agency has independently requested a statement from the Attorney General that he or she will defend the validity of the alternative examining procedure. If plaintiffs elect to make a presentation to the Attorney General, they shall do so within fifteen days after having filed their notice with the Attorney General.

The Attorney General or his or her designate shall decide within 45 days of the filing of plaintiff's notice whether he or she will defend the validity of the agency's use of the alternative examining procedure in question. The failure of the Attorney General to decide whether to defend the validity of the alternative examining procedure within 45 days of the filing of plaintiff's notice shall not preclude the Government from defending the validity of such procedure one the Attorney General has made that decision.

(f) No agency may assert in Court the validity of an alternative examining procedure for any job category listed in Appendix A unless it has first obtained a written statement from the Attorney General or his or her designate that he or she will defend the validity of the agency's use of the alternative examining procedure. The procedure for obtaining such a statement shall be as follows:

(i) An agency seeking such a statement from the Attorney General or his or her designate as to his or her willingness to defend the validity of the alternative examining procedure being used for a job category listed in Appendix A shall submit a written request to the Attorney General, together with a complete copy of the validation study and supporting documents, including documents which contain evidence, based upon an adequate sample, of the impact of the alternative examining procedure upon blacks and Hispanics. The agency shall also notify plaintiffs that it has requested from the Attorney General a written statement as to his or her willingness to defend the validity of the alternative examining procedure in question.

(ii) Plaintiffs shall have forty-five days after receipt of the notification to decide whether to make a submission to the Attorney General or to his or her designate in opposition to the request, and to submit any such opposition with the Attorney General or his or her designee.

(iii) Plaintiffs shall have the discretion to decide whether to make a presentation to the Attorney General in opposition to an agency's request for a written statement as to his or her willingness to defend the validity of the alternative examining procedure. The failure of the plaintiffs to make a submission to the Attorney General shall not in any way preclude or limit them in challenging the actions of an agency, or seeking relief therefrom, in an enforcement proceeding under paragraph 17.

(iv) The Attorney General shall reach his or her decision whether to defend the validity of the agency's use of the alternative examining procedure based on the Uniform Guidelines and on the purpose of this Decree. If an agency intends to cease the use of all practicable efforts to eliminate adverse impact resulting from the alternative examining procedure for the job category in question, the Attorney General shall reach his or her decision whether to defend the validity of the agency's use of such procedure based on the final use standards of the Uniform Guidelines and on the purposes of this Decree. Upon reaching his or her decision, the Attorney General shall notify plaintiffs whether he or she will defend the validity of the agency's use of the alternative examining procedure in court.

No agency may seek a judicial determination of the validity of its alternative examining procedure unless plaintiffs have drawn the validity of its procedure into question in an enforcement proceeding under the provisions of &para; 17 of this Decree, and the issue of validity is to be reached under the provisions of &para; 18, or unless the agency has been sued in another lawsuit with respect to the procedure.

(g) For the purposes of &para;&para; 12(a) through 12(f), the phrase 'job category' as used therein shall include any group of job categories subject to the identical use of the same examining procedure.

(h) At the end of the period of retention of the Court's jurisdiction, a showing by defendants that an alternative examining procedure is lawful under Title VII shall constitute a defense to any adverse impact resulting from use of the alternative examining procedure. After the effective date of this Decree, the government shall not defend, in any administrative or judicial proceeding whether or not connected with this case, the validity of the PACE for use in internal promotions or in selection for Upward Mobility programs. The EEOC shall inform its hearing officers of the contents of this paragraph. Nothing contained in this Decree shall be construed to limit an agency's ability to raise any other available defense in such an administrative or judicial proceeding.

(i) Pursuant to the policies and objectives described in paragraph 2 above, if any government agency seeks during the life of this Decree to develop and validate an alternative examining procedure for any of the job categories set forth in Appendix A, the agency shall, as a part of any validity study supporting the use of such a procedure, consider other available examining procedures which would satisfy the agency's need for efficiency and productivity by fairly and validly testing the relative capacity and fitness of applicants to perform on the job, and which would have no adverse impact or less adverse impact than the procedure or procedures primarily being studied. If there is no available procedure which, on the basis of available information, appears to satisfy the agency's needs for efficiency and productivity and to be feasible for use for that occupation, with less adverse impact against blacks and Hispanics than the procedures primarily being studied, the agency shall study the validity and adverse impact of such procedure as part of its validity study. When the validity study is completed, the agency shall adopt the selection procedure that results in the least adverse impact while continuing to meet agency needs. No alternative examining procedure may be used by an agency pursuant to this Decree without all practicable efforts (see paragraph 8(f)), unless the agency has available evidence, based upon an adequate sample, of the impact of the selection procedure upon blacks and upon Hispanics.

(j) Nothing in this Decree shall be interpreted as requiring any Federal agency to hire any person for a job who is unqualified to perform the job under qualification standards that have been properly validated in accord with the Uniform Guidelines.

(k) Once an agency has demonstrated the validity of an alternative examining procedure in accordance with this Decree, it has no obligation under the Decree to modify the procedure or the use of the procedure, or to replace it, unless there is another selection procedure for the same job having at least substantially equal validity and less adverse impact.

**E. Alternative Examining Procedures**

13(a). No later than three years after the effective date of this Decree, every job category which is presently subject to the PACE requirement shall, when filled by competitive examination, be filled on the basis of an examining procedure which is designed to examine for that particular job category. Some PACE job categories have relatively few vacancies and OPM may develop an alternative examining procedure for a group of such job categories. In all other cases, separate procedures shall be developed for each PACE occupation by OPM, or by the various agencies, in conjunction with OPM, for those jobs which are generally utilized by their own agencies. The following schedule should be met for members of the defendant class as a whole:

```
Minimum Percentages of
Appointments Under Alter-
native Examining Procedures
For Jobs Which Had Been
Subject to the PACE Requirement
Date As of January 1, 1979

One year after effective date of Decree 50%

Two years after effective date of Decree 80%

Three years after effective date of Decree 100%
```
At the conclusion of this time table, the PACE will no longer be used for any purpose in the Federal Government except for non-operational research purposes.

(b) If for any reason defendants are unable substantially to fulfill the schedule to which both parties have agree, defendants shall promptly notify the Court and plaintiffs, make available reasonable explanatory information, negotiate with plaintiffs in

good faith to attempt to resolve or by-pass the problems causing the difficulty in meeting this schedule, and negotiate additional appropriate provisions to accomplish the purposes of this Decree on the above timetable. Failing agreement, the matter shall be submitted to the Court for resolution.

14. Except as provided in paragraphs 12(c) through (g), during the period of retention of the court's jurisdiction, the agency responsible for making selections for the job categories listed in Appendix A shall use all practicable efforts to eliminate adverse impact in selections for those job categories by use of the Outstanding Scholar, College Co-op, bilingual/bicultural, and similar programs described in &para; 16. It is the intent of the parties that these special programs are supplemental to the interim use of the PACE and alternative examining procedures to assure equal employment opportunity in the Federal service. It is not the intent of the parties that use of these special program shall replace the interim use of the PACE or the use of alternative examining procedures, other than as may be necessary to effectuate the purposes of the Decree. Use of these programs by defendants shall not be limited by the standards in the definition of adverse impact. Defendants shall ensure that each school on the list provided by plaintiffs pursuant to &para; 16(d), and other institutions of higher education, as appropriate, shall continue to receive notification of these programs and encouragement to disseminate information on these programs to their students.

15. Effective upon entry of this Decree, defendants shall permanently be prohibited from using the PACE for any placement purposes except as described in &para; 16.

**F. Interim Examining Procedures**

16. Until the alternative examinig procedure developed by an agency and/or OPM for a particular job category presently coverec by PACE is put into effect, an agency may continue to use the PACE to fill vacancies in that job category. If all practicable efforts are required by paragraph 12, those efforts shall be carried out through use of the following special programs:

(a) The Outstanding Scholar Program in which those college graduates who obtained a grade point average of 3.5 or higher on a 4.0 scale for all undergraduate courses completed toward a baccalaureate degree, or who stand in the upper 10% of a baccaluareate graduating class, or of a major university subdivision such as a College of Arts and Sciences, shall be eligible for direct hire by any Federal agency without regard to the list of eligibles for those jobs listed in Appendix A, without the necessity of taking the PACE or an alternative examining procedure. This program shall be maintained throughout the period of retention of jurisdiction by the Court.

(b) A bilingual and/or bicultural certification process in which candidates may be selectively certified to PACE jobs. This special program is in addition to and expands upon the bilingual hiring provisions set forth in FPM Chapter 332:

(1) Any PACE jobs shall be covered by this program if interaction with the public or job performance would be enhanced by having bilingual and/or bicultural skills. Upon request of an agency, OPM examining offices will issue a list of the names and addresses of PACE eligibles who indicate on their application proficiency in the Spanish language, and are also proficient in the use of English. Agencies will be authorized to offer appointment to any eligible on that list without further reference to test score or rank on the PACE register, provided the following conditions are met: (a) the job is covered by this program, as described above; and (b) the agency has determined through use of a reasonable questionnaire or interview that the applicant to whom appointment is to be offered has the required level of oral Spanish language proficiency and/or the requisite knowledge of Hispanic culture. Agencies must maintain documentation that these requirements have been met.

(2) In jobs for which alternative examining procedures have been developed, each agency will be authorized to appoint applicants who obtain a passing score on the alternative procedures, without further regard to rank, provided that: (a) the job is covered by this program, as described above, and (b) the agency has determined through use of a reasonable questionnaire or interview that the applicant to whom appointment is to be offered has the required level of oral Spanish language proficiency and/or the requisite knowledge of Hispanic culture. Agencies must maintain documentation that these requirements have been met.

(3) If there is adverse impact, as described in paragraph 8(b) above, against Hispanics, and if an agency has not used this program, the burden will be on the agency to prove that: (a) the PACE job requires little or no public contact or that job

performance will not be enhanced by bilingual/bicultural personnel; or (b) all of the positions filled were in geographical areas without a significant proportion of Hispanic or Spanish-speaking people among the groups intended to be served by the job category in question. This latter showing may be made only be a reasonable survey of the agency's clients or public.

(c) The College Co-op and other work study programs in which student participants who successfully complete the programs may be noncompetitively converted to career status. This program includes students who attend junior colleges and other two-year colleges. The College Co-Op Program as used by the Department of Defense may continue, so long as that method of use is required by other provisions of law.

(d) OPM shall establish a program to provide assistance to class members in preparing to take the PACE during the interim period, at no cost to class members, exclusive of transportation and subsistence costs. Notion of the program's existence will be communicated under the provisions of &para; 22 and, otherwise, generally through publication other than individual communication, under procedures to be agreed upon by the parties. This program shall be administered in selection areas of high black and Hispanic concentration. It is the intent of the Decree to provide such training to the largest number of class members consistent with practicable time and cost considerations. OPM shall within thirty days after the entry of this Decree develop such a program and present it to plaintiffs for negotiation and approval. In the event that the parties can not agree on the nature and scope of such program, the parties shall present their competing proposals to the Court for resolution. This program shall be in operation in time to benefit class members taking the first administration of the PACE after the mutual approval of, or decision on, this proposal. The program shall be primarily for the benefit of class members.

(e) Upon entry of this Decree, OPM shall coordinate and monitor a program to ensure that the class herein shall receive the greatest possible benefit of the special programs described above. Prior to the effective date of this Decree, plaintiffs shall provide OPM with a list of colleges and universities (two and four years) with a significant number of black and/or Hispanic students. Defendants shall ensure that each school on that list, and other institutions of higher education, as appropriate, shall be notified of the existence of the special programs set forth above and shall be encouraged to disseminate information on these programs to their students. OPM shall also provide reasonable notice of the availability of the programs described in this paragraph, under the provisions of &para; 22, to class members making use of OPM Job Information Centers, and, otherwise, generally by publication rather than by individual communications.

(f) In the event that the special programs described in this paragraph are not, in the view of any party, sufficient in actual operation to eliminate adverse impact, the parties shall meet and attempt to negotiate changes in these programs, or additional programs, which shall be sufficient to accomplish the purposes of this Decree. The court shall be informed of any resolution reached by the parties. If the parties are unable to reach agreement, the matter shall be presented to the Court for resolution.

**G. Enforcement**

17(a) The enforcement procedure established by this paragraph shall be for the purpose of enforcing Title VII generally. Plaintiffs may exercise discretion as to the matters to be raised under this enforcement procedure, in light of their judgement as to the courses of action most likely to effectuate the purposes of this Decree, and shall not be required to litigate every claim of every class member in this procedure. Plaintiffs' decision not to litigate a particular claim in this case shall not be construed so as to bar any right which plaintiff class member may have to bring an independent Title VII action for any violation of Title VII, whether or not such violation is also a violation of this Decree, if neither the claim, nor the relief sought, in such an independent Title VII action is in conflict with the provisions of this Decree. During the period of retention of jurisdiction, if either party becomes aware of any Title VII action brought by a member of the plaintiff class, as defined in &para; 3, which raises a challenge to the interim use of the PACE or the use of an alternative examining procedure as a selection device for a job category listed in Appendix A, that party shall promptly notify the other party of the existence of such an action. Thereafter, either party may move, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the district court having jurisdiction over this Decree. The non-moving party shall join in and support the motion to transfer venue to the district court with jurisdiction over this Decree. In appropriate circumstances, the parties may agree to the taking of evidence at the district in which the action was originally brought.

(b) An enforcement proceeding seeking individualized injunctive and monetary relief instituted under the provisions of this paragraph to challenge noncompliance by an agency with its obligation to use all practicable efforts to eliminate adverse impact, as provided in &para; 12, must be initiated under &para; 17(c) no later than twelve months, extendable by consent of

the parties or for good cause shown, after plaintiffs obtain information sufficient to place plaintiffs on notice of such non-compliance whether obtained from defendants under &para;&para; 24 and 25 or otherwise. Where this requirement has been met, plaintiffs may obtain individualized monetary and injunctive relief for violations by the agency of its obligation to use all practicable efforts to eliminate adverse impact as required by &para; 12, only for the period of time commencing with the start of the last full reporting year immediately preceding plaintiffs' receipt of the information described above. Where plaintiffs' showing of adverse impact is based on the aggregation of statistics for a two year period, plaintiffs may obtain such individualized relief with respect to the first year in this period only if no adverse impact could be shown in that year considered by itself. An enforcement proceeding seeking generalized injunctive relief shall be brought within 2 years, extendable by consent of the parties or for good cause shown, after plaintiffs obtain information sufficient to place plaintiffs on notice of such non-compliance, whether obtained from defendants under &para;&para; 24 and 25 or otherwise. In the even plaintiffs assert a violation of the Decree other than the validity of an alternative examining procedure, the procedures described in subparagraphs (c) - (h) shall apply during the period of retention of the Court's jurisdiction. Subparagraphs (f) through (h) shall also be applicable to proceedings involving the validity of the alternative examining procedure.

(c) If plaintiffs charge the agency or agencies involved, including OPM, with a violation of the Decree, they shall state the manner in which plaintiffs contend that each agency has so violated the Decree. The requirements of such charges shall be as set forth in paragraphs 12(e) and 18 of this Decree. Plaintiffs and the agency or agencies charged shall not immediately commence the formal enforcement proceeding after the filing of the charge, but shall first attempt in good faith to resolve the matter by agreement, unless a delay would result in irreparable injury to the interests of any party. This period of informal conciliation shall last for a period of 60 days, unless extended by consent of both the plaintiffs and the agency or agencies charged. During the period of informal conciliation, plaintiffs, the agency or agencies charged, OPM (if not already included as an agency charged) and the Department of Justice shall participate in the effort voluntarily to resolve the dispute. During this period, the parties shall within fifteen days exchange additional information relevant to the issue of the existence of adverse impact against blacks of against Hispanics, defenses to the existence of adverse impact, and data relevant to the question whether all practicable efforts have been used to eliminate this impact in selection for the job category or job categories in question. The parties shall negotiate in good faith to attempt to establish additional special programs which shall eliminate the adverse impact against blacks or against Hispanics.

(d) If it is not possible to reach a satisfactory settlement of plaintiffs' charges within 60 days (or such extended period as has been agreed), the plaintiffs may within 45 days thereafter commence the formal enforcement proceeding. The parties shall as soon as practicable thereafter jointly submit a statement of stipulated facts and disputed issues and, if joing submission is not possible, separately submit a statement of disputed issues to be resolved during the formal proceeding.

(e) In the conduct of prehearing proceedings and of the hearing, the provisions of the relevant Federal Rules of Civil Procedure and the Federal Rules of Evidence shall be applicable. The purpose of a hearing under this paragraph will be to resolve any disputed issues of fact concerning the extent to which the agency or agencies charged have used all practicable efforts to eliminate adverse impact against blacks or against Hispanics. Where adverse impact has been shown the burden of proving the use of all practicable efforts shall in all cases by on the agency or agencies charged. The determination whether the agency or agencies charged have used 'all practicable efforts' shall be made in accordance with the standards set forth in &para; 8(f). The parties shall have the right to call any witnesses or introduce any documentary evidence which is relevant to these issues. Where there exists no disputed issue of material fact, the Court may resolve the charges upon submission of an appropriate motion and memorandum, with oral argument if necessary.

(f) Prior to the hearing or decision on the merits, plaintiffs may petition the Court for preliminary relief. Such a petition shall be decided according to the normal standards for the entry of preliminary relief in this Court.

(g) In the event that an enforcement proceeding involves the issue of the validity of an alternative examining procedure for final use, and the validation study for this procedure is not yet complete but is likely to be completed within ninety days or less, the Court shall stay its proceedings on the merits of the validation issue for ninety days, extendable by consent of the parties or for extraordinary cause shown, so that the validation study may be completed. Proceedings on other issues, and discovery on the validation issue, shall continue during the stay.

(h) Upon the completion of an evidentiary hearing or summary judgement proceeding, the Court shall issue a decision and, if appropriate, shall direct the appropriate agency or agencies to take remedial actions. If an agency's validation efforts satisfy

the interim use standard of section 5(j) of the Uniform Guidelines and if the agency has not ceased the use of all practicable efforts pursuant to &para; 12(c), the liability of the agency shall be conditional. If upon the completion of the agency's validation efforts, the agency establishes that the examining procedure in question is valid and appropriate for final use under the standards of the Uniform Guidelines, the agency shall not be liable for use of the procedure. If, upon the completion of the agency's validation efforts, or upon the agency's cessation of use of all practicable efforts pursuant to &para; 12(c) the agency is not able to establish that such selection procedure is valid and appropriate for final use, the agency shall be liable for all relief available under Title VII and under this Decree for its use of the procedure. An agency which has satisfied the interim use standard of the Uniform Guidelines may continue to use its procedure operationally, provided that it continue to use all practicable efforts to eliminate adverse impact arising from use of the procedure in question.

(i) Each class member who files a formal administrative complaint of discrimination alleging that any agency has discriminated against such class member (a) by interim use of the PACE pursuant to the provision of this Decree, (b) by use of an alternative examining procedure pursuant to the provisions of this Decree, (c) by failing to make all practicable efforts to eliminate adverse impact during the period of retention of jurisdiction, (d) by using the PACE for purposes of internal promotions or selection for Upward Mobility programs after the effective date of this Decree, or (e) by taking any action in violation of this Decree which would tend to frustrate its purposes, shall be notified in writing of the existence of this Consent Degree and of the opportunity to request counsel for plaintiffs to handle his or her complaint of discrimination through the special enforcement provisions of this paragraph. The written notice to be provided to such class members shall state the name and address of a particular attorney for plaintiffs, to be designated by counsel for plaintiffs as the contact attorney for such complaints. OPM and the EEOC shall notify each Federal agency of the obligation of its complaints officials to provide such notice, and shall provide them with a supply of forms for this purpose. OPM, the EEOC, and/or the Department of Justice may independently suggest to the aforesaid contact attorney that a particular complaint of discrimination should be handled under the provisions of this paragraph. Upon request by plaintiffs, plaintiffs shall be provided with copies of the informal and formal complaints filed by the class member in question, and with any other materials compiled in the processing of the informal or formal complaints up to the time of such request. Such copies shall be provided to each of plaintiffs' representatives on the implementation committee established under the provisions of &para; 23. The provision of such copies shall begin the informal processing of his or her complaint. Plaintiffs shall have until the end of the informal resolution process set forth in &para; 17 (d) - 17(g). In the absence of any notification by counsel for plaintiffs during this period, the charge shall be processed under the EEOC regulations in effect at that time. The complainant, as a class member under this Decree, shall be bound by the provisions of &para;&para; 6, 13, 14 and 18. The provisions of this subparagraph shall not diminish in any way the substantive right of any class member to pursue any claim of discrimination alleging that any agency or official of such agency has applied an otherwise lawful alternative examining procedure in an unlawfully discriminatory manner, or alleging that any agency has unlawfully discriminated against class members who have been determined to be qualified under an alternative examining procedure established pursuant to this Decree, but apply only to the forum in which claims covered by this Decree may be resolved.

18 (a) In enforcement proceedings under paragraph 17 of this Decree, plaintiffs may charge with a violation of the Decree any agency (including OPM) with a job category listed in Appendix A and any agency (including OPM) which has developed or administered an alternative examining procedure for such a job category. Any charge of a violation of the Decree must be limited to actions or omissions of the agency charged, or over which it had effective control.

(b) In enforcement proceedings under paragraph 17 of this Decree against agencies charged with a violation of this Decree, the following burdens of proof and order of resolution of issues shall be followed. First, plaintiffs shall have the burden of proving adverse impact as defined in paragraph 8(b), with respect to a job category listed in Appendix A. Second, the agency charged shall have the opportunity to rebut this showing of adverse impact with respect to such job category, in whole or in part, by proving one or more of the affirmative defenses defined in paragraph 9. Third, if the agency charged with a violation of the Decree as to such a job category is unable to prove such an affirmative defense, or if the affirmative defenses proved do not eliminate all of the adverse impact shown with respect to such a job category, the agency shall have the burden of proving that it has used all practicable efforts to eliminate adverse impact as to that job category in accordance with the standards set forth in &para; 8(f). If an agency is unable to meet this burden, then plaintiffs shall be entitled to relief. In rebuttal, plaintiffs may have the opportunity to prove that the agency has engaged in subjective discrimination against blacks or Hispanics who are determined as a result of the selection procedure to be qualified. Fourth, if the agency has proved that it has used all practicable efforts to eliminate adverse impact, as defined in &para; 9(b), with respect to such job category in accordance with the standards defined in &para; 8(f), then the agency which developed or administered the alternative

examining procedure is valid and appropriate for final use under the standards of the Uniform Guidelines. However, as provided in &para; 17(h), an agency's satisfaction of the interim use provisions of the Uniform Guidelines, combined with continued use of all practicable efforts to eliminate adverse impact, shall entitle the agency to continue use of the procedure operationally, and its liability shall be conditioned on its subsequent further showing that the procedure in question meets the final use standards of the Uniform Guidelines.

(c) Where a showing of adverse impact, as defined in paragraph 8(b)(5)(iv) of this Decree, encompasses more than one job category listed in Appendix A, the term 'job category' in subparagraph 18(b) shall be construed in accordance with the computation of adverse impact defined in &para; 8(b)(5)(iv). Where a showing of adverse impact, as so defined, encompasses more than one agency with a job category listed in Appendix A, the term 'agency' shall, where appropriate, be construed as if it were in the plural.

(d) The order of resolution of issues set forth in subparagraph (b) may be altered by the Court or by consent of the parties to an enforcement proceeding under &para; 17.

19. Nothing in this Decree shall relieve the defendants from complying with additional requirement in Federal statutes, or in regulations consistent with any such statute. Subject to the provisions of &para; 8(h), the defendants shall not be relieved of their obligations under the Decree by any subsequent executive order of regulation.

## H. Relief for Individual Plaintiffs And Class Members

20. Upon execution of appropriate releases to be approved by the Court, OPM shall pay to the four individual plaintiffs and plaintiff-intervenor the following:

```
Angel Luevano $6,250
Melody Van $6,250
Vicky Chapman $12,500
Vilma Diaz $10,000
```

OPM will undertake to assist the plaintiffs Chapman and Diaz who wish to be considered for a Federal job, in obtaining such employment. The plaintiffs will advise OPM of the job series and geographic area for which they wish to be considered. Upon the notification of any Federal agency to OPM that it has a vacancy in that job series and geographic area which it wishes to fill competitively, OPM shall advice such agency of the availability of the named plaintiff(s) for that position and shall further advise such agency that the named plaintiffs may be offered appointment to that position without further competition. OPM's obligation to proide such assistance to a plaintiff shall terminate as soon as she receives a bona fide offer of employment which the plaintiff accepts or declines.If the assistance provided by OPM has not resulted in obtaining the desired jobs for plaintiffs Chapman and Diaz by the end of the first year after the effective date of this Decree, the parties shall meet and attempt to negotiate what relief, if any, may be appropriate.

21. OPM has searched its records, and has been unable to identify non-plaintiff class members who have filed charges of discrimination agains OPM, whether under 5 C.F.R. part 300, 5 C.F.R. Part 713, or successor regulations, arising from the competitive use of the PACE, and whose charges are still pending in the administrative or judicial process. The parties and the Court recognize that the above-mentioned class members may bring themselves to the attention of the Court as a result of the notice to be issued in this case. On verification that they took the PACE and filed the charge, and upon execution of the appropriate release, OPM shall pay to each such class member the amount of $3000 in full settlement of all their individual claims arising from competitive use of the PACE, and shall assist them to obtain suitable jobs with the Federal government in accordance with the process set forth in &para; 20.

22. OPM shall establish a mailing list, which shall include the names and addresses of all class members who respond to the notice contained in Appendix B to the Order Granting Preliminary Approval to the Consent Decree and shall use this list to inform such class members of the dates and places at which the training described in &para; 16(d) shall be made available to class members, of the alternative examining procedures which are expected to go into effect before the date of the next mailing, of the job categories to which they are applicable, of the steps class members should take in order to be considered under such alternative examining procedures, and of the government offices class members should contact in order to find out more information about these training programs, procedures, and job categories. These mailings hall be made on a semi-annual basis during the period from the entry of this Decree until the last alternative examining procedure is put into

effect, and shall be without charge to class members.

**I. Monitoring, Recordkeeping and Reporting**

23. In order to provide for effective and timely implementation of the Decree, there shall be established a committee to be composed of three representatives from among plaintiffs' counsel, and three representatives from the Department of Justice and the defendants, which shall meet not less than a twice a year in order to discuss the continued implementation of the Decree.

24. In order to enable plaintiffs effectively to monitor compliance with the obligations of OPM and the various agencies to use to the greatest extent feasible the special programs described in &para; 16, OPM shall collect, maintain and compile the following information and shall provide it to plaintiffs annually on a nationwide basis, on the basis of the geographic areas for PACE announcement attached hereto as Appendix B, on an agency-by-agency basis (nationally and by such geographic area), and by job category (nationally and by such geographic area, for purposes of subparagraph (b)):

(a) the number of non-Hispanic white applicants, the number of black applicants, and the number of Hispanic applicants who take the PACE;

(b) the number of non-Hispanic white applicants, the number of black applicants, and the number of Hispanic applicants on a nationwide basis who were appointed to a particular PACE GS-5 and GS-7 entry-level job category by any competitive selection procedure including the PACE and any of the special programs described in &para; 16. This information shall be provided on an overall basis, and shall be further broken down by the grade level of the appointment.

(c) Each agency shall provide OPM with a detailed annual statement describing its efforts to maximize use of each of the special programs described in &para;&para; 14 and 16.

(d) The parties shall attempt to reach agreement, no later than thirty days after the entry of this Decree, on the forms on which the information described in subparagraphs (a) and (b) above shall be reported. If the parties are unable to reach agreement, the matter shall be presented to the Court for resolution.

25. In order to enable plaintiffs effectively to monitor compliance by the various agencies and by OPM with their obligations as to alternative examining procedures, and to use, to the greatest extent feasible, the special programs described in &para; 16, OPM shall require each Federal agency to collect, maintain and compile the following statistics for each job category or alternative examining procedure on a nationwide basis, on the basis of the geographic, or other areas formerly used for PACE announcement attached hereto as Appendix B, or other area on an agency-by-agency basis (nationally and by such geographic area or other hiring entity), and by job category (nationally and by such geographic area or other hiring entity), and to submit such information to OPM and to plaintiffs annually:

(a) The number of non-Hispanic white applicants, the number of black applicants, and the number of Hispanic applicants for a GS-5 or GS-7 entry-level job category listed in Appendix A which is filled on the basis of a competitive procedure;

(b) The number of non-Hispanic white applicants, the number of black applicants, and the number of Hispanic applicants who were appointed into any job category listed in Appendix A for which there is such an alternative examining procedure. This information shall be provided on an overall basis, and shall also be broken down by selection procedure and by each special program. Each of the above breakdowns shall be further broken down by the grade level of the appointments.

(c) Each agency shall provide OPM with a detailed annual statement describing its efforts to maximize use of the special programs described in &para;&para; 14 and 16.

(d) The parties shall attempt to reach agreement, no later than thirty days after the entry of this Decree, on the forms on which the information described in subparagraphs (a) and (b) above shall be reported. If the parties are unable to reach agreement, the matter shall be presented to the Court for resolution.

26. As early as possible in the course of the development of an alternative examining procedure, OPM and/or the agency

involved shall provide to plaintiffs an accurate summary of the development plan, including a description of the type of procedure contemplated and of the design of the validation study, or of a substantial change in previously submitted plans. OPM shall transmit semi-annually to plaintiffs the summaries it has received from other agencies, and those which it has itself developed. Plaintiffs and their experts may review and comment upon the summaries, and make such suggestions for the improvement as seem appropriate. OPM and/or the agency involved shall consider such comments, and shall notify plaintiffs of the ultimate decision on the matters commented upon. Any failure by plaintiffs to provide comments shall be given now weight in any enforcement proceedings under the provisions of paragraph 17.

27. In addition to providing plaintiffs with the information and reports specified in this Decree, OPM shall make available to plaintiffs information and documents in response to reasonable requests for information concerning the status of efforts by the various agencies and OPM to implement this Decree. Such access shall be provided to plaintiffs upon procedure. This information shall be provided as an overall basis, and shall also be broken down by selection procedure and by each special program. Each of the above breakdowns shall be further broken down by the grade level of the appointments.

(c) Each agency shall provide OPM with a detailed annual statement describing its efforts to maximize use of the special programs described in &para;&para; 14 and 16.

(d) The parties shall attempt to reach agreement, no later than thirty days after the entry of this Decree, on the forms on which the information described in subparagraphs (a) and (b) above shall be reported. If the parties are unable to reach agreement, the matter shall be presented to the Court for resolution.

26. As early as possible in the course of the development of an alternative examining procedure, OPM and/or the agency involved shall provide to plaintiffs an accurate summary of the development plan, including a description of the type of procedure contemplated and of the design of the validation study, or of a substantial change in previously submitted plans. OPM shall transmit semi-annually to plaintiffs the summaries it has received from other agencies, and those which it has itself developed. Plaintiffs and their experts may review and comment upon the summaries, and make such suggestions for the improvement as seem appropriate. OPM and/or the agency involved shall consider such comments, and shall notify plaintiffs of the ultimate decision on the matters commented upon. Any failure by plaintiffs to provide comments shall be given no weight in any enforcement proceedings under the provisions of paragraph 17.

27. In addition to providing plaintiffs with the information available to plaintiffs information and documents in response to reasonable requests for information concerning the status of efforts by the various agencies and OPM to implement this Decree. Such access shall be provided to plaintiffs upon their reasonable and specific advance request, in writing, stating the nature of the information sought and the aspect of compliance to which it relates.

28. If any questions should arise between the parties as to the implementation of, or compliance with, any provisions of this Decree, or as to actions by any agency other than OPM which would tend to frustrate the goals of this Decree, the parties shall attempt to resolve the matter informally before presenting it to the Court for its resolution, except as provided by procedures set forth in paragraph 17. No party shall present such a matter to the Court until 60 days after having notified all opposing counsel of record of their concerns or objections in writing, and after having attempted in good faith to resolve the matter by agreement, unless a 60-day delay would result in irreparable injury to the interests of any party.

29. Any party may petition the Court for the establishment of a judicial timetable for the taking of any actions contemplated by this Decree, in the event that any other party has acted, or has failed to act, in a manner which conflicts with the goal of the Decree that disputes and enforcement actions be resolved expeditiously, or which conflicts with any timetable established in this Decree, or which would otherwise cause undue delay in the achievement of any of the purposes of this Decree.

30. In the even that any lawsuit is filed by any person or organization challenging the legality of any provision of the Decree, OPM or the Department of Justice shall immediately notify a representative of plaintiffs' counsel previously designated for this purpose and shall move to have the lawsuit or the relevant part thereof transferred to the United States District Court for the District of Columbia for consolidation with this action. Plaintiffs shall apply for leave to intervene in that lawsuit, and OPM and the Department of Justice shall support their application. Plaintiffs shall support the motion to transfer the case, or the relevant part thereof, to this Court for consolidation with this action. If the motion to transfer is unsuccessful, plaintiffs and defendants shall seek in the lawsuit to defend this Decree and to prevent any interference with its objectives. These

parties may, by agreement, waive the provisions of this paragraph with respect to any particular case.

**J. Fees and Costs**

31. Defendants shall pay the reasonable attorneys' fees and costs (including expert fees and reasonable expenses) of plaintiffs' counsel. The parties have agreed that the amount of such fees and costs shall not be discussed until after the Court has preliminarily approved the Decree. Plaintiffs shall submit a statement of their fees and costs (including expert fees and reasonable expenses) to defendants as soon as practicable after preliminary approval has been granted, showing the time spend and request rate for each person for whom payment is sought with a brief description of that person's services, and a statement of expenses with reasonable back-up documentation. Defendants shall respond to plaintiffs as soon as practicable, and shall as part of their objections, if any, state their contentions as to what would have been a reasonable amount of time, a reasonable rate, or a reasonable amount of expense. The parties shall then meet and attempt to negotiate the amount of the fees, costs and expenses in good faith. In the event that the parties are unable to reach agreement, the Court shall resolve the matter. In the event that the parties do reach an agreement, they shall make a joint submission to the Court, with appropriate evidentiary materials, and the Court shall review the agreement for its reasonableness.

32. Defendants shall pay the reasonable fees and costs (including expert fees and reasonable expenses) of plaintiffs for services performed in monitoring compliance with this Decree, serving on the implementation committee, reviewing summaries of development plans and providing suggestions as described in &para; 26, determining whether to oppose the agency's request(s) for a statement that the Attorney General shall defend the validity of its alternative examining procedure, making any presentation to the Attorney General or his or her designate with respect to such matters, and conducting the further negotiations contemplated by this Decree, in attempts to resolve disputed matters informally as described in &para;&para; 17(a) through 17(d). If there is a challenge to the decree, the parties will present to the Court the issue of whether the payment of attorneys' fees and costs to plaintiffs for their efforts to defend the Decree pursuant to the provisions of &para; 30 is permissible under section 706(k) of Title VII of the Civil Rights Act of 1964, as amended. If the Court determines that the payment of attorneys' fees and costs is permissible, the defendants shall pay the reasonable fees and costs (including expert fees and reasonable expenses) of plaintiffs in their efforts to defend the Decree pursuant to the provisions of &para; 30. In order to obtain any payments under the provisions of this paragraph, plaintiffs shall submit quarterly statements to defendants containing the types of information described in &para; 31. Defendants reserve the right to object to any of the time included on such statements, to any of the request rates, and to any of the expenses for which reimbursement is sought. Defendants shall make any such objections as soon as practicable after the receipt of plaintiffs' quarterly statement, and shall as part of their objections state the types of information described in &para; 31. The parties shall then meet and attempt to negotiate the matter in good faith and, failing agreement, shall present the matter to the Court for resolution. The Court shall be informed of any resolution of the matter by the parties.

33. Plaintiffs shall be entitled to payment of their reasonable attorneys' fees and costs (including expert fees and reasonable expenses) if they prevail, for services performed in judicial proceedings instituted under the provisions of paragraph 17. Plaintiffs shall be considered to have prevailed in such proceedings if they obtain relief as a result of such proceedings. If plaintiffs have prevailed, they shall at an appropriate time submit a statement of their claim for fees and costs to OPM and to the agency involved, with the types of information described in &para; 31. Defendants shall respond to plaintiffs as soon as practicable, and shall provide in such response the type of information described in &para; 31. The parties shall then meet and attempt to negotiate the matter in good faith and, failing agreement, shall present the matter to the Court for resolution. The Court shall be informed of any resolution of the matter by the parties.

**K. Effective Date**

34. the Decree shall become effective sixty (60) days after it is finally approved and entered by the Court.

```
Respectfully submitted,

RICHARD T. SEYMOUR                      ALICE DANIEL
Lawyers' Committee for Civil            Assistant Attorney General
Rights Under Law
520 Woodward Building                   CHARLES F. C. RUFF
733 Fifteenth Street, N.W.              United States Attorney
```

```
Washington, D.C. 20005
BARBARA J. O'MALLEY
ELAINE R. JONES    PAUL BLANKENSTEIN
BARRY L. GOLDSTEIN    BARBARA WARD
806 Fifteenth Street, N.W.    SHIRLEY HUANG
Suite 940    MARK A. CHAVEZ
Washington, D.C. 20005    Attorneys, Department of Justice
                         9th & Pennsylvania Avenue, N.W.
JACK GREENBERG    Washington, D.C. 20530
CHARGLES STEPHEN RALSTON
PATRICK O. PATTERSON    By: _____
GAIL J. WRIGHT    Attorneys for Defendant
10 Columbus Circle
Suite 2030    Of Counsel:
New York, N.Y. 10019
                  JAMES S. GREEN
                  JACK G. KNEBEL Associate Deputy General Counsel
McCutchen, Doyle, Brown    Office of Personnel Management
& Enerson    Washington, D.C.
Three Embarcadero Center
San Franciso, California 94111

VILMA S. MARTINEZ
MORRIS J. BALLER
Mexican American Legal Defense
and Educational Fund
28 Geary Street
Sixth Floor
San Francisco, California 94108

JOHN H. ERICKSON
Erickson, Beasley & Hewitt
12 Geary Street
Eighth Florr
San Francisco, California 94108

KENNETH KIMERLING
Puerto Rican Legal Defense
Fund
95 Madison Avenue
Suite 1304
New York, N.Y. 10016

Of Counsel:

EVA J. PATERSON
San Francisco Lawyers'
Committe for Urban Affairs
625 Market Street
Suite 1208
San Francisco, California 94105

RUSSEL GALLOWAY
Legal Aid Society of
Alameda County
2357 San Pablo Avenue
Oakland, California 94612

By: _____
Attorneys for Plaintiffs

Dated: February 24, 1981
```

**1981 WL 402614 (PERSONNET)**

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.